**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| St. Paul Guardian Insurance Company, et al., | No. CV-13-08297-PCT-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Town of Colorado City, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Doc. 44) and Plaintiffs' Motion for Leave to Supplement the Record with Court Order and for the Court to Take Judicial Notice of the Order (Doc. 57). The Court now rules on the motions.

**I.    Background**

Plaintiffs St. Paul Guardian Insurance Company ("St. Paul") and The Travelers Indemnity Company ("Travelers") filed this declaratory judgment action seeking a determination that they have no duty to defend or indemnify their insured, Defendant Town of Colorado City (the "Town") in ongoing litigation between the Town and a third-party. (Doc. 1).

St. Paul issued an insurance policy to the Town for the period of February 11, 2009 through February 11, 2010 (the "2009/2010 Policy"). St. Paul also issued a policy to the Town for the period from February 11, 2010 through February 19, 2011 (the "2010/2011 Policy"). Travelers issued a policy to the Town for the period from February

19, 2013 through February 19, 2014 (the "2013/2014 Policy"). Collectively, the Court will refer to the 2009/2010 Policy, the 2010/2011 Policy, and the 2013/2014 Policy as the "Policies."

On November 22, 2011, the United States Department of Justice ("DOJ") notified the Town by letter that the DOJ was prepared to file a complaint against the Town for violations of various federal statutes. On June 21, 2012, the United States sued the Town in *United States v. Town of Colorado City et al.*, No. CV12-08123-PCT-HRH in the United States District Court for the District of Arizona (the "Underlying Lawsuit"). The United States alleges in the Underlying Lawsuit that the Town engaged in a pattern or practice of illegal discrimination against individuals who are not members of the Fundamentalist Church of Jesus Christ of Latter-day Saints ("FLDS"). (Doc. 1 Ex. 4 ¶ 4). The United States alleges in the Complaint filed in the Underlying Lawsuit (the "Underlying Complaint") that the Town's police force selectively enforces laws based on the victims' or offenders' religion. (*Id.* ¶¶ 16-35). The United States also alleges that the Town engages in discrimination on the basis of religion in the provision of housing and utility service, (*id.* ¶¶ 36-41), and denies access to public facilities on the basis of religion, (*id.* ¶¶ 42-50).

The United States alleged three causes of action against the Town in the Underlying Complaint. The first cause of action is for a violation of 42 U.S.C. § 14141 by engaging in a pattern or practice of conduct that deprives persons of rights, privileges or immunities secured or protected by the United States Constitution (the "First Cause of Action"). (*Id.* ¶ 55). The second cause of action is for a violation of the Fair Housing Act by discriminating on the basis of religion in the availability and rental of housing and by interfering with or intimidating persons exercising their Fair Housing Rights (the "Second Cause of Action"). (*Id.* ¶¶ 58-61). The third cause of action is for a violation of the Civil Rights Act by depriving individuals of equal utilization of a public facility. (*Id.* ¶ 63). The Court in the Underlying Lawsuit has dismissed the United States' third cause of action, Doc. 39 in No. CV12-08123-PCT-HRH, and the remaining two causes of

action are proceeding to trial, Doc. 618 in No. CV12-08123-PCT-HRH.[1]

Plaintiffs filed the present lawsuit seeking a declaratory judgment that Plaintiffs have no duty to defend or indemnify the Town under the 2009/2010 Policy, 2010/2011 Policy, and 2013/2014 Policy for the counts of the Underlying Complaint. (Doc. 1).

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'"

---

[1] Regarding Plaintiffs' motion to supplement the record, the Court read the summary judgment order in the Underlying Lawsuit before Plaintiffs filed their motion. A court may take judicial notice of proceedings "in other courts" on its own volition when those proceedings "have a direct relation to matters at issue." Fed. R. Evid. 201(c)(1); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2006). The Court is taking judicial notice of the summary judgment order, and accordingly, will deny Plaintiffs' motion.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### B.     Interpretation of Insurance Policies

Under Arizona law, insurance policies, as contracts between insurers and insureds, are construed "to effectuate the parties' intent." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 158 P.3d 209, 212 ¶ 8 (Ariz. Ct. App. 2007). "Insurance policy provisions must be read as a whole, giving meaning to all terms. If the contractual language is clear, [the Court] will afford it its plain and ordinary meaning and apply it as written." *Id.* (citation omitted). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 ¶ 13 (Ariz. Ct. App. 2000).

### C.     Duties Under an Insurance Policy

"An insurance policy imposes on the insurer the duty to defend the insured against claims potentially covered by the policy and the duty to indemnify the insured for covered claims." *Colo. Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 769 ¶ 13 (Ariz. Ct. App. 2012).

#### 1.     Duty to Defend

The duty to defend "arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 615 ¶ 19 (Ariz. Ct. App. 2007). "[A]n insurer's duty to defend is determined by the language of the insurance policy." *Cal. Cas. Ins. Co. v. State Farm*

1 *Mut. Auto. Ins. Co.*, 913 P.2d 505, 508 (Ariz. Ct. App. 1996). "[I]f any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 544 ¶ 15 (Ariz. Ct. App. 2007) (quoting *W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.*, 634 P.2d 3, 6 (Ariz. Ct. App. 1981)). There is no absolute duty to defend, however, when facts alleged in a complaint "ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage." *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973).

### 2. Duty to Indemnify

As with the duty to defend, when there is an express contract between the parties, the language of that contract determines the scope of the insurer's duty to indemnify. *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 197 P.3d 758, 763 ¶ 10 (Ariz. Ct. App. 2008). But unlike the duty to defend, the duty to indemnify "hinges not on the facts" alleged in a lawsuit; instead, it hinges "on the facts (proven, stipulated or otherwise established) that actually create the insured's liability." *Colo. Cas.*, 288 P.3d at 772 ¶ 25; *see also INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 980 (Ariz. Ct. App. 1986) ("Indemnification against liability applies once liability for a cause of action is established; the indemnitee is not required to make actual payment.").

Thus, the duty to defend is broader than the duty to indemnify because a lawsuit may allege "facts that, if true, would give rise to coverage, even though there would ultimately be no obligation to indemnify if the facts giving rise to coverage were not established." *Lennar*, 151 P.3d 538, 543-44 ¶ 11; *see also Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 727 ¶ 27 (Ariz. 2014).

### III. Analysis

Plaintiffs contend that none of the Policies provide coverage for the claims of the Underlying Lawsuit. (Doc. 44 at 1). This requires the Court to compare the two remaining causes of action in the Underlying Complaint against the coverages provided

in the Policies.

### A. First Cause of Action

As the court in the Underlying Lawsuit found, (Doc. 45-1 at 80-82), the First Cause of Action states a claim for a violation of 42 U.S.C. § 14141, which addresses an unconstitutional "pattern or practice of conduct by law enforcement officers." 42 U.S.C. § 14141(a); (Doc. 1 Ex. 4 ¶¶ 51-56). The United States also alleges in the Underlying Complaint, in part, that the Town's Marshal's Office arrests non-FLDS individuals "without probable cause on the basis of religion." (*Id.* ¶ 31).

#### 1. Public Entity General Liability Protection

The Town contends that the First Cause of Action is covered under the personal injury coverage of the Public Entity General Liability Protection ("PEGL") provided in the 2009/2010 Policy and the 2010/2011 Policy. (Doc. 50 at 10-11). Because the language of the 2009/2010 Policy and the 2010/2011 Policy is identical with respect to PEGL coverage, the Court will refer to them jointly as the "2009-11 Policies" when appropriate.

The personal injury liability coverage of the 2009-11 Policies states that St. Paul will "pay amounts any protected person is legally required to pay as damages for covered personal injury that[] results from your operations; and is caused by a personal injury offense committed while this agreement is in effect." (Doc. 1-1 at 103; Doc. 1-3 at 105). The 2009-11 Policies define a "personal injury offense," in part, as "[f]alse arrest, detention, or imprisonment;" "[w]rongful entry into, or wrongful eviction from, a room, dwelling, or premises that a person occupies, if such entry or eviction is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises;" and "[i]nvasion of the right to private occupancy of a room, dwelling, or premises that a person occupies, if such invasion is committed by or for the landlord, lessor, or owner of that room, dwelling, or premises." (Doc. 1-1 at 103; Doc. 1-3 at 105).

The personal injury liability coverage excludes law enforcement activities:

> **Law enforcement activities or operations.** We won't cover injury or damage or medical expenses that result from law

> enforcement activities or operations.
>
> *Law enforcement activities or operations* means any of the official activities or operations of your police department, sheriff agency, or other public safety organization which enforces the law and protects persons or property.

(Doc. 1-1 at 120; Doc. 1-3 at 122).

Because the sole factual basis for the First Cause of Action is the actions of the Town's law enforcement officers, these allegations are within the scope of the 2009-11 Policies' law enforcement activities exclusion. There is no coverage for the First Cause of Action under the 2009-11 Policies' PEGL.[2]

### 2. Law Enforcement Liability Protection

The Town argues that the First Cause of Action is covered under the Law Enforcement Liability Protection ("LEL") of the 2009-11 Policies. (Doc. 50 at 5). The LEL coverage provides that St. Paul will "pay amounts any protected person is legally required to pay as damages for covered injury or damage that[] results from law enforcement activities or operations by or for you; happens while this agreement is in effect; and is caused by a wrongful act that is committed while conducting law enforcement activities or operations." (Doc. 1-1 at 165; Doc. 1-4 at 27).

The LEL coverage excludes costs associated with demands for non-monetary relief:

> We won't cover: any cost, expense, or fee: or any amount required to comply with a court or administrative order, judgment, ruling, or decree; that results from any action or demand, or any part of any claim, which seeks declaratory, injunctive, or other non-monetary relief.

(Doc. 1-2 at 6; Doc. 1-4 at 33).

Plaintiffs admit that the First Cause of Action is based on "law enforcement activities or operations" within the scope of LEL coverage but assert that coverage is

---

[2] Even absent the law enforcement activities exception, as Plaintiffs point out, the Town's alleged actions did not involve the Town as the landlord, lessor, or owner of a dwelling, and therefore these actions cannot fall within the scope of the coverage provision. (Doc. 54 at 5).

- 7 -

excluded under the 2009-11 Policies because the First Cause of Action seeks only injunctive relief. (Doc. 44 at 11). The First Cause of Action is pursuant to 42 U.S.C. § 14141, which provides that the United States may "obtain appropriate equitable and declaratory relief" to eliminate a pattern or practice of conduct violating § 14141(a). 42 U.S.C. § 14141(b). Accordingly, the First Cause of Action falls within the LEL's exclusion for non-monetary relief and there is no coverage for the First Cause of Action under the 2009-11 Policies' LEL.

### 3.     Umbrella Excess Liability Protection

The 2009/2010 Policy provides Umbrella Excess Liability Protection ("UEL"). (Doc. 1-3 at 102). Plaintiffs argue that the UEL coverage does not cover the First Cause of Action for the same reasons that the PEGL and LEL coverages do not apply. (Doc. 44 at 12). Plaintiffs do not further develop this argument, and their citation to the UEL portion of the 2009/10 Policy is a range of forty-two pages comprising the entire coverage part. *See* (*id.*) Nonetheless, the Court has reviewed the UEL's entire terms and it is not clear to the Court, in the absence of proper briefing on this issue, that the UEL affords no coverage for the First Cause of Action. For example, although Plaintiffs argue, and the Court agrees, that the PEGL's law enforcement activities exclusion precludes coverage for the First Cause of Action, the UEL includes coverage for law enforcement activities. (Doc. 1-2 at 139). Moreover, although Plaintiffs argue, and the Court agrees, that the LEL's non-monetary relief exclusion precludes coverage for the First Cause of Action, the Court has not found any such exclusion in the UEL. The Court expresses no opinion as to whether there is potential UEL coverage for the First Cause of Action, as it cannot make this determination on the present record.

Because Plaintiffs have failed to meet their burden as movants to establish their entitlement to judgment as a matter of law with respect to the UEL, the Court must deny summary judgment on this issue.

### 4.     Public Entity Management Liability Protection

The Town also asserts coverage under the 2009-11 Policies' Public Entity

Management Liability Protection ("PEML"). (Doc. 50 at 12). The Court will discuss PEML coverage in detail in its analysis, *infra*, of the Second Cause of Action. With respect to the First Cause of Action, the PEML coverage excludes losses resulting from law enforcement activities or operations. (Doc. 1-2 at 22; Doc. 1-4 at 49). The PEML coverage also excludes costs associated with demands for non-monetary relief. (Doc. 1-2 at 20; Doc. 1-4 at 47). Thus, for the same reasons discussed with respect to the similar exclusions in the PEGL and LEL coverages, there is no coverage under the PEML coverage for the First Cause of Action.

### 5. Excess Errors and Omissions Liability Protection

The 2009/10 Policy provides Excess Errors and Omissions Liability Protection ("EE&O") over certain coverages in the 2009/10 Policy. (Doc. 1-2 at 146). Plaintiffs argue that there is no EE&O coverage for the First Cause of Action because it "provides excess coverage over the PEML coverage part of the 2009/2010 Policy only and requires coverage be afforded under the 2009/2010 PEML coverage part as a prerequisite to coverage." (Doc. 44 at 14). Thus, Plaintiffs contend that because there is no coverage under PEML for the First Cause of Action, there can be no EE&O coverage for the First Cause of Action. (*Id.*)

The plain language of the EE&O coverage defeats Plaintiffs' argument. The EE&O coverage provides that St. Paul will pay amounts that are, among other things, "covered by your Basic Insurance." (Doc. 1-2 at 146). "Basic Insurance" is defined as "only the insurance for which the Schedule of Basic Errors And Omissions Liability Insurance in the Coverage Summary shows[] a description of coverage; and limits of coverage amounts." (*Id.*) The "Schedule Of Basic Errors and Omissions Liability Insurance" lists two underlying coverages: PEML and an "Employee Benefit Plans Administration Liability Claims-Made." (*Id.* at 144). Therefore, a lack of PEML coverage does not necessarily defeat EE&O coverage.

Because Plaintiffs have not briefed the issue of whether coverage potentially exists under the "Employee Benefit Plans Administration Liability Claims-Made" coverage

1 part, the Court cannot determine whether EE&O coverage exists for the First Cause of Action. Although an insured has the burden of establishing coverage under a policy, that burden does not relieve an insurer who moves for summary judgment of its obligation as the movant to prove entitlement to judgment as a matter of law. The Court cannot declare that there is no coverage when it is uncertain whether such coverage in fact exists. Plaintiffs have failed to show that they are entitled to judgment on this issue as a matter of law.

### 6. The 2013/2014 Policy

Plaintiffs argue that there is no coverage under the 2013/2014 Policy for the First Cause of Action. (Doc. 44 at 14-15). Unlike the Town's position on EE&O coverage, the Town does not dispute that the 2013/2014 Policy does not cover the First Cause of Action. The Town does not identify any disputed issue of material fact pertaining to coverage under the 2013/2014 Policy. Therefore, Plaintiffs are entitled to judgment as a matter of law that there is no coverage for the First Cause of Action under the 2013/2014 Policy.

### B. Second Cause of Action

The Second Cause of Action states a claim for a violation of 42 U.S.C. § 3614(a), the Fair Housing Act. (Doc. 1 Ex. 4 ¶¶ 57-61). In the Second Cause of Action, the United States alleges that the Town engaged in a pattern or practice of making housing unavailable to residents on the basis of religion and in denying utility services and building permits on the basis of religion. (*Id.* ¶¶ 36-38, 58-59).

### 1. PEGL Coverage

With respect to the PEGL coverage under the 2009-11 Policies and the Second Cause of Action, the Town argues that its alleged failure to provide water services based upon religion falls under the "failure to supply" coverage of the policies and its "alleged conduct in umpiring the property disputes unique to Colorado City residents" constitutes an event leading to claims of loss of use of property, which are both covered claims. (Doc. 50 at 11).

1    The 2009-11 Policies provide that St. Paul will "pay amounts any protected person
2  is legally required to pay as damages for . . . property damage that[] happens while this
3  agreement is in effect; and is caused by an event." (Doc. 1-1 at 102; Doc. 1-3 at 104). The
4  2009-11 Policies cover property damage that results from the failure of "any protected
5  person to adequately supply electricity, gas, oil, steam, or water service." (Doc. 1-1 at 99,
6  119; Doc. 1-3 at 101, 121). The PEGL coverage defines "event" as "an accident,
7  including continuous or repeated exposure to substantially the same general harmful
8  conditions." (Doc. 1-1 at 103; Doc. 1-3 at 105).

9    Plaintiffs assert there is no coverage under the PEGL for the Second Cause of
10 Action because the allegations in the Underlying Complaint concern intentional conduct
11 by the Town that does not meet the definition of "event" as "an accident." (Doc. 44 at 9).
12 Arizona courts have repeatedly defined the term "accident" as used in insurance policies
13 as "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate
14 character, and often accompanied by a manifestation of force." *W. Cas. & Sur. Co. v.*
15 *Hays*, 781 P.2d 38, 40 (Ariz. Ct. App. 1989) (quoting *Century Mut. Ins. Co. v. S. Ariz.*
16 *Aviation, Inc.*, 446 P.2d 490, 492 (Ariz. Ct. App. 1968)). The United States alleges in the
17 Second Cause of Action that the Town *intentionally* failed to supply utility service on the
18 basis of religion. (Doc. 1 Ex. 4 ¶¶ 36-41). The Town's intentional failure to supply utility
19 service on the basis of religion would not be accidental and thus is outside the definition
20 of "event" in the 2009-11 Policies.[3] Accordingly, there is no coverage under the 2009-11

---

[3] Plaintiffs' motion cites an unpublished disposition of the Ninth Circuit Court of Appeals, *Bolinas Cmty. Pub. Utility Dist. v. Ins. Co. of N. Am.*, Nos. 90-16832, 91-15083, 967 F.2d 584 (9th Cir. 1992) (unpublished table decision). (Doc. 44 at 9). Although Plaintiffs' citation to this case was improper, *see* 9th Cir. R. 36-3, the Town contends that this case is inapposite because the insurance policy at issue in *Bolinas* did not include "failure to supply" coverage. (Doc. 50 at 11). Even if true, the Town's argument would still fail because the failure to supply coverage in the 2009-11 Policies is subject to the requirement that there be an "accident."

The Town also argues that its conduct is analogous to faulty workmanship, citing *Lennar*, in which the Arizona Court of Appeals held that property damage resulting from faulty construction constituted an "occurrence" under the policy at issue. (Doc. 50 at 11); *Lennar*, 151 P.3d at 546 ¶ 24. But the Town's alleged intentional conduct is not similar to the accidental faulty workmanship of *Lennar*; instead, it is clearly outside the scope of an "event" as defined in the 2009-11 Policies.

Policies' PEGL for the Second Cause of Action.

### 2. LEL Coverage

The Town contends the LEL coverage under the 2009-11 Policies covers the Second Cause of Action because the United States' allegations of housing discrimination involve the unlawful treatment of non-FLDS residents by the Town's Marshal's Office. (Doc. 50 at 6). Plaintiffs contend that the Second Cause of Action is not based on law enforcement activities and operations and there is no LEL coverage. (Doc. 44 at 12).

The portion of the Underlying Complaint discussing the United States' allegations of housing discrimination does not explicitly mention the Town's law enforcement agents as enabling or furthering discrimination. *See* (Doc. 1 Ex. 4 ¶¶ 36-41). However, several of the allegations imply the complicity of law enforcement. For example, paragraph 38 of the Underlying Complaint alleges that the Town claims non-FLDS individuals have no right to occupy or own their property, (*id.* ¶ 38), which suggests that the Town's law enforcement agents do not protect those individuals' property interests. Furthermore, the Town has presented actual evidence that its law enforcement officers have discriminated in matters relating to housing and property. (Doc. 51-1 at 5-9) (testimony of an expert witness and Jinjer Cooke, a fact witness). Therefore, the Second Cause of Action potentially implicates the LEL coverage.

Plaintiffs argue, however, that the Town cannot show that the United States seeks any covered damages for the Second Cause of Action. (Doc. 44 at 12). In the Underlying Complaint, the United States asks the Court to "[a]ward compensatory and punitive damages, pursuant to 42 U.S.C. § 3614(d)(1)(B) to all persons harmed by the Defendants' discriminatory practices" and to "[a]ssess a civil penalty against each defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), to vindicate the public interest." (Doc. 1-5 at 98-99).

With respect to the request in the Underlying Complaint for compensatory and punitive damages to "all persons harmed" by the Town's "discriminatory practices," the parties dispute whether these damages arise from law enforcement activities occurring

during the coverage period for the 2009-11 Policies. The 2009-11 Policies cover only those "amounts any protected person is legally required to pay as damages for covered injury or damage" during the coverage period of February 11, 2009 through February 11, 2011. (Doc. 1-1 at 2, 165; Doc. 1-3 at 2; Doc. 1-4 at 27).

Plaintiffs assert that although the Underlying Complaint alleges that the Town has engaged in discriminatory practices for twenty years, (Doc. 1 Ex. 4 ¶ 5), facts outside the Underlying Complaint establish a lack of coverage. (Doc. 54 at 6). Specifically, Plaintiffs point to the deposition testimony of sixteen individuals for whom Plaintiffs assert the United States is seeking compensatory damages. Plaintiffs assert that none of these sixteen individuals have alleged incidents occurring during the coverage periods of the 2009-11 Policies. *See* (Doc. 45 ¶¶ 17-28; Doc. 54 at 6-7). Nothing in this testimony forecloses other incidents from serving as the basis for a jury in the Underlying Lawsuit to award monetary damages, however.[4] At trial in the Underlying Lawsuit, the United States may introduce evidence of incidents occurring during the 2009-11 Policies' coverage period, and such evidence would be consistent with the allegations in the Underlying Complaint that there has been a longstanding pattern or practice of discrimination by the Town. Plaintiffs have not shown any facts that would preclude the United States from offering evidence of incidents occurring during the 2009-11 Policies' coverage period and supporting an award of compensatory damages. Accordingly, Plaintiffs are not entitled to judgment as a matter of law that there is no coverage under the LEL coverage for the Second Cause of Action.[5]

### 3. PEML Coverage

Plaintiffs contend that there is no coverage for the Second Cause of Action in the PEML coverage of the 2009-11 Policies because of the following exclusion (the

---

[4] For this reason, the Court need not address Plaintiffs' arguments that three of these individuals are not aggrieved parties for whom the United States seeks compensatory damages. *See* (Doc. 54 at 6-7).

[5] Therefore, the Court need not address Plaintiffs' arguments concerning whether civil penalties are within the scope of coverage. *See* (Doc. 54 at 7-8).

- 13 -

"Enforcement Action Exclusion"):

> **Complaint or enforcement action.** We won't cover loss that results from any complaint, enforcement action, claim, or suit brought by or for any federal, state, or local governmental regulatory or enforcement agency against any protected person.

(Doc. 1-2 at 19; Doc. 1-4 at 46; Doc. 44 at 13). As the Underlying Lawsuit was brought by the DOJ against the Town, it is a "suit brought by . . . any federal . . . enforcement agency against any protected person." The plain language of the Enforcement Action Exclusion applies, and there is no coverage under the PEML coverage for the Second Cause of Action.[6]

Nevertheless, the Town argues that the plain language of the 2009-11 Policies should not apply. First, the Town contends that the Enforcement Action Exclusion does not include claims brought by federal enforcement agencies for damages awarded to "persons aggrieved." (Doc. 50 at 13). The Town argues that had St. Paul intended to exclude this kind of lawsuit, St. Paul would have stated "by or for any federal, state, or local governmental regulatory or enforcement agency, or on behalf of any individuals and/or any aggrieved persons." (Doc. 50 at 13) (emphasis omitted). This argument fails because adding such hypothetical language would merely cause the Underlying Lawsuit to satisfy both the original condition that the claim or lawsuit be brought by a federal enforcement agency as well as the newly-added condition that it was brought on behalf of aggrieved persons. Because the Enforcement Action Exclusion already applies, the absence of the Town's hypothetical language is without significance.

The Town also contends the Enforcement Action Exclusion is ambiguous, and cites an Arizona Supreme Court case relating to the interpretation of ambiguous provisions in insurance policies. (Doc. 50 at 13). This argument fails because the exclusion is not ambiguous; to the contrary, it clearly defines the circumstances to which

---

[6] The Court notes that unlike the First Cause of Action, liability under the Second Cause of Action for housing discrimination does not necessarily require the involvement of law enforcement officers. Thus, the Court need not discuss the PEML's exclusion for law enforcement activities.

- 14 -

it applies.[7]

Finally, the Town argues that the Enforcement Action Exclusion violated its reasonable expectation of coverage. (*Id.* at 14). Under Arizona insurance law, "[t]he reasonable expectations doctrine relieves an insured from 'certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.'" *State Farm Fire & Cas. Ins. Co. v. Grabowski*, 150 P.3d 275, 279 ¶ 14 (Ariz. Ct. App. 2007) (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 399 (Ariz. 1984)). "The doctrine, however, requires more than the insured's 'fervent hope' that coverage exists, and therefore only applies under certain limited circumstances." *Id.*

As the Arizona Court of Appeals has stated:

> Specifically, if the drafting party had "reason to believe" that the signing party would not have accepted a particular term, the court may strike that term from the agreement. The drafter's reason to believe that the signing party would not have assented to the term may be (1) shown by the parties' prior negotiations, (2) inferred from the circumstances of the transaction, (3) inferred from the fact that the term is bizarre or oppressive, (4) inferred from the fact that the term eviscerates the non-standard terms to which the parties explicitly agreed, or (5) inferred if the term eliminates the dominant purpose of the transaction. An inference that the drafter knew the signing party would not have agreed to the term may be reinforced if the signing party never had an opportunity to read the term or if it is illegible or otherwise hidden from view.

*Id.* at 280 ¶ 17 (citing *Darner*, 682 P.2d at 297; other citations omitted).

Thus, the Town must prove that St. Paul had reason to believe that the Town would not have accepted the Enforcement Action Exclusion. The Town presents no

---

[7] The Town's additional citation to *Martin Marietta Corp. v. Insurance Company of North America*, 47 Cal. Rptr. 2d 670 (Ct. App. 1995), is inapposite. (Doc. 50 at 14). There, the issue was whether the policy's coverage for "other invasion of the right of public occupancy" included damages arising from a government's claims for pollution emanating from the policyholder's property and contaminating the groundwater of other landowners. 47 Cal. Rptr. 2d at 682-83. The California Court of Appeal found no distinction between a governmental claimant and a non-governmental claimant, holding that the allegations of the complaint, and not the identity of the plaintiff, determined coverage. *Id.* Nothing in *Martin Marietta* remotely supports the Town's arguments in the present case.

evidence on this point, arguing only that because the insurance proposal did not list the exclusion, it did not "alert the insured that a policy designed to broadly cover damages resulting from the conduct of a public entity, does not actually cover damage awards if asserted by a governmental agency on behalf of an individual." (Doc. 50 at 15). But the first page of the proposal states:

> **IMPORTANT:** Proposed coverages are provided by the company's forms, subject to the terms, conditions and limitations of the policy (ies) in current use by the company. The policies themselves must be read for specific details. No warranty is made or implied regarding compliance with any bid specifications, unless such provisions are a part of the proposal."

(Doc. 51-2 at 7-8). The inclusion of this warning in the proposal negates any suggestion that St. Paul had reason to believe that the Town would ignore the warning and assume that the proposal's summaries of coverage implied there were no exclusions other than any listed in the proposal. The Town fails to show the existence of a genuine issue of material fact regarding the Town's reasonable expectation of coverage.[8]

Because the Enforcement Action Exclusion applies, there is no coverage under the 2009-11 Policies' PEML for the Second Cause of Action.

### 4. EE&O Coverage

Plaintiffs argue that there is no EE&O coverage under the 2009/2010 Policy for the Second Cause of Action. (Doc. 44 at 14). As the Court discussed with respect to EE&O coverage for the First Cause of Action, Plaintiffs have not shown that coverage does not exist under the "Employee Benefit Plans Administration Liability Claims-Made" coverage part that is underlying insurance for the EE&O coverage. Thus, Plaintiffs have failed to show their entitlement to judgment on this issue as a matter of law.

---

[8] At oral argument, the Town argued for the first time that because the PEML coverage is a claims-made policy with a retroactive date of 1999 and individuals claiming against a public entity must file a notice of claim within 180 days of the accrual of their cause of action, the Town reasonably expected that the PEML coverage applied to federal claims. The Court will not consider arguments raised for the first time at oral argument.

### 5. UEL Protection

Plaintiffs assert that the UEL coverage under the 2009/2010 Policy does not cover the Second Cause of Action for the same reasons as with respect to the First Cause of Action, namely that the PEGL and LEL coverage does not apply. (Doc. 44 at 12). As the Court has discussed, however, the Second Cause of Action potentially implicates LEL coverage, and the UEL follows the LEL in providing coverage for law enforcement activities or operations. (Doc. 1-2 at 139). Accordingly, Plaintiffs have not demonstrated their entitlement to judgment as a matter of law that there is no coverage for the Second Cause of Action.

## C. Duty to Defend

Plaintiffs ask the Court to conclude that they have no duty to defend the Town in the Underlying Lawsuit. (Doc. 44 at 16; Doc. 54 at 11). Because the Court concludes that coverage potentially exists under the 2009-11 Policies for at least one claim in the Underlying Lawsuit, Plaintiffs have a duty to defend the entire Underlying Lawsuit until its completion. *See Lennar*, 151 P.3d at 544 ¶ 15.

## D. Duty to Indemnify

Plaintiffs also ask the Court to declare that they have no duty to indemnify the Town for the claims in the Underlying Lawsuit. (Doc. 44 at 16-17). As the Court has stated, the duty to indemnify hinges on the facts actually proved in the Underlying Lawsuit that create the Town's liability. Because Plaintiffs have not shown that they are entitled to judgment as a matter of law on all coverages under the 2009-11 Policies for the First Cause of Action, the Court cannot conclude that Plaintiffs would have no duty to indemnify the Town for liability under the First Cause of Action. Similarly, because Plaintiffs have not shown that they are entitled to judgment as a matter of law on all coverages under the 2009-11 Policies for the Second Cause of Action, the Court cannot conclude that Plaintiffs would have no duty to indemnify the Town for liability under the Second Cause of Action.

However, because it is undisputed that there is no coverage under the 2013/2014

1  Policy for the allegations of the Underlying Complaint (and therefore there is no duty to
2  defend), it is appropriate for the Court to declare that Plaintiffs have no duty to indemnify
3  the Town under the 2013/2014 Policy.[9] Plaintiffs are entitled to a judgment that Plaintiffs
4  have no duty to indemnify the Town under the 2013/2014 Policy for liability arising from
5  the First Cause of Action or the Second Cause of Action.

### E. Attorneys' Fees

The Town requests an award of its reasonable attorneys' fees incurred in this case, pursuant to A.R.S. § 12-341.01(A). (Doc. 50 at 17). Because this case has not reached a final judgment and it is unclear which party will ultimately prevail, any award of attorneys' fees would be premature. The Town may renew its request following trial.

## IV. Conclusion

In summary, with respect to the First Cause of Action, there is no coverage under the following coverage parts of the 2009-11 Policies: (1) Public Entity General Liability Protection; (2) Law Enforcement Liability Protection; and (3) Public Entity Management Liability Protection.

With respect to the Second Cause of Action, there is no coverage under the following coverage parts of the 2009-11 Policies: (1) Public Entity General Liability Protection and (2) Public Entity Management Liability Protection.

Because Plaintiffs fail to show that there is no coverage for the First Cause of Action and the Second Cause of Action under the Umbrella Excess Liability Protection and Excess Errors and Omissions Liability Protection coverage parts of the 2009-11 Policies, and because there is potential coverage for the Second Cause of Action under

---

[9] Generally, ripeness and fairness concerns exist when an insurer brings a declaratory action to contest coverage while the underlying tort action has not yet reached final disposition, because the insurer seeks to prove facts in the declaratory action that are contrary to the insured's interests in the tort action. 16 Couch on Insurance § 227:37 (3d ed.). Other courts have recognized that in certain circumstances, a declaratory judgment may be inappropriate where the issues resolved "would be fully decided in pending tort actions." *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 849 (Md. Ct. App. 1975). Because the Town does not contest the inapplicability of the 2013/2014 Policy, however, it will not be prejudiced by a judgment that Plaintiffs have no duty to indemnify under the 2013/2014 Policy.

the Law Enforcement Liability Protection coverage part of the 2009-11 Policies, Plaintiffs have a duty to defend the Town in the Underlying Action. Whether Plaintiffs will have a duty to indemnify the Town under the 2009-11 Policies for the Underlying Lawsuit will depend on the facts to be proved in the Underlying Litigation.

There is no coverage under the 2013/2014 Policy for the claims of the Underlying Lawsuit, either under the First Cause of Action or the Second Cause of Action, and therefore Plaintiffs have no duty to indemnify the Town under the 2013/2014 Policy for the claims in the Underlying Lawsuit.

For the foregoing reasons,

**IT IS ORDERED** granting in part and denying in part Plaintiffs' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Doc. 44).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Leave to Supplement the Record with Court Order and for the Court to Take Judicial Notice of the Order (Doc. 57).

Dated this 13th day of July, 2015.

James A. Teilborg
Senior United States District Judge